(C. D. 381)

JULIUS BLUM & CO. INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided October 10, 1940)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation described on the invoice as "296 bundles Hot rolled structural channels, angles and flats." Sixty of said bundles, represented by invoice item 7499/I, were assessed with duty at the rate of $\frac{1}{6}$ of 1 cent per pound under paragraph 312 of the Tariff Act of 1930 as steel channels. The contents of the remaining bundles were assessed with duty at the rate of $\frac{3}{10}$ of 1 cent per pound under paragraph 304 of said act as steel not specially provided for; and it is claimed that said contents are properly dutiable at the rate of $\frac{1}{6}$ of 1 cent per pound under said paragraph 312 as structural shapes of steel of the kind therein made dutiable at the latter rate.

The plaintiff offered in evidence a small piece of one of the imported lengths bearing the number 4153, which was admitted in evidence as Illustrative Exhibit 1, and a blueprint showing the use of articles

like Illustrative Exhibit 1, in the construction of the Municipal Airport at North Beach, New York City, which was admitted in evidence as Illustrative Exhibit B. In addition, the plaintiff offered in evidence the testimony of three witnesses. The Government offered in evidence certain pages of a catalog issued by the plaintiff-corporation, which were admitted as Collective Illustrative Exhibit A, together with the testimony of three witnesses.

The plaintiff's first witness, Julius Blum, president of the plaintiff-corporation, testified that he was thoroughly familiar with the merchandise at bar; that said merchandise was imported in lengths of 18 to 20 feet and weighed about 30 pounds each; that each bundle contained 4 or 5 of such lengths; that all of the merchandise appearing on the German invoices as No. 1341 without any qualifying description, and on the French invoices as No. 4145, is always designated in the witness' catalog (Illus. Ex. A) as No. 4153, that he has been engaged in the steel business for the past 30 years, and was familiar with structural steel shapes; that his understanding of a structural steel shape was a member used in a structure to add strength to it either by itself or when assembled with other steel shapes; that Illustrative Exhibit 1 is a structural steel shape; that he had used it as such; that Illustrative Exhibit 1 was designed by the witness for the purpose of constructing steel stairways and for fulfilling certain requirements placed by law on the construction of buildings; that he had imported merchandise similar to Illustrative Exhibit 1 for a number of years and that it had never varied in weight, shape, or construction; and that it had always been used in connection with a steel plate in the construction of stairways.

The second plaintiff's witness, Julius Eckmann, a qualified civil engineer and licensed architect, testified that from 1909 to 1912 he was a structural draftsman; that from 1912 to 1917 he was employed in the Bureau of Buildings of the City of New York as an inspector of steel and iron construction; that in the course of his duties he examined building plans and also the subsequent construction under said plans; that since 1917 he has been engaged in private practice as an engineering architect; that he was a member of the Structural Engineers Society and also of the Society of New York Architects; that he is thoroughly familiar with structural steel shapes; that a structural steel shape is designed to carry a load with a minimum amount of material; that in his opinion Illustrative Exhibit 1 is a structural steel shape; that in pursuance of his duties as inspector in the Bureau of Buildings of the City of New York he was familiar with the statutory requirements and regulations governing building construction; that it was his duty to see that such statutory regulations were enforced; that in pursuance of such duties he was familiar with articles similar to Illustrative Exhibit 1, and that the latter was a structural steel shape;

that it had certain physical properties similar to angles and channels; that it is halfway between an angle and a full channel; that it has strength equal to that of an angle of the same weight, or to a channel that is not quite of the same weight; that it has flanges which add strength to the member; that he has had experience throughout his professional career and as a building inspector with channels and angles of the same weight, and that he had no hesitancy in saying that Illustrative Exhibit 1 is a structural shape.

On cross-examination the witness testified in part as follows:

X Q. Can you say by looking at Illustrative Exhibit 1 that it was designed to support a maximum load with the use of a minimum amount of material?—A. Yes.

X Q. It was?—A. Yes.

X Q. How can you tell that?—A. We have a flange here and a flange there. This material has the same properties as an angle attachment working with a web member. As it is constructed, this member is the same, exactly the same, as an angle with a little variety due to the outside flange. Its carrying properties are the same.

X Q. Your answer was that you determine that this would carry the same weight as an angle; is that right?—A. I stated that this member takes the place of an angle, and has a carrying capacity greater than that of an angle of equivalent weight.

X Q. But I asked you if you can tell whether that particular exhibit was designed to support a maximum weight with a minimum amount of material?—A. Yes, this member is. First of all, as far as the thickness is concerned our regulations have us go into it to see that it has the proper thickness. They cannot make them any thinner than one-eighth of an inch, which is the same as an angle. That is the minimum thickness used here. And as far as the flangings are concerned, we have a good deal more than an angle has. Consequently, this member carries a maximum load with the use of a minimum amount of material.

\* \* \* \* \* \* \*

X Q. Did you ever hear that referred to as a molding?

\* \* \* \* \* \* \*

A. It may be used as molding in certain cases, the same as structural pieces are used for ornamental purposes.

X Q. Did you ever hear that referred to as a molding?—A. I have not heard it referred to as a molding.

X Q. That is not a molding?—A. It may be used as molding.

X Q. Just answer the question. Is it a molding or not?—A. That is a structural steel shape.

X Q. Then your answer is that it is not a molding?—A. This can be used as molding, just the same as it may be used as a structural shape. I would say it is a molding that is a structural shape.

\* \* \* \* \* \* \*

A. \* \* \* If there is anything ornamental about this, it is incidental.

\* \* \* \* \* \* \*

X Q. But can you tell, after determining what strength this Illustrative Exhibit 1 will possess whether it was designed to support that maximum strength with a minimum amount of material?—A. That shape as such will carry a considerable load and very economically.

X Q. You haven't answered my question yet. My question can be answered either yes or no. I asked you if, after determining the strength of Illustrative Exhibit 1, you can state whether that shape, Illustrative Exhibit 1, was designed to support a maximum load with a minimum amount of material?—A. Yes.

X Q. You can tell that?—A. That member was designed to carry a maximum load with a minimum amount of material.

X Q. You can say that?—A. Yes; because that member has strength where strength is needed structurally. It has flanges inside and outside. It has stiffness and has the minimum thickness of material that is used in a steel product.

X Q. That to you proves it was desinged to carry a maximum load with a minimum amount of material?—A. Yes.

X Q. Mr. Eckmann, did you ever design a structure using a section such as number 4153, Illustrative Exhibit 1?—A. In a structure, I have. Yes.

X Q. What did you use it for?—A. I used it for stairs.

On redirect examination the witness testified in part as follows:

R. Q. I will now ask you to state in detail how you used articles that are similar to Illustrative Exhibit 1, similar in all respects as you say, in the construction to stairs?

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

A. This was used to form part of a built-up section comprising a member known as a stair stringer. This stair stringer carries the load of the stair, the dead weight of the stair, plus the legally required superimposed load of so many pounds per square foot depending on the building code on load conditions. This built-up member consists of a web plate, and this member comprises the upper and lower flanged section, and may be compared somewhat with a building girder where a web plate is used with an upper and lower angle, forming the entire section. This combined unit has both strength and rigidity. &ast; &ast; &ast;

The third plaintiff's witness, Samuel Fassler, a building contractor since 1912, testified that from 1931 to 1937, inclusive, he was Building Commissioner of New York City; that as such he had charge of all structural work in the City of New York; that all such work was under his supervision; that he is thoroughly familiar with all types of structural steel shapes and has been so familiar for the last 35 years; that Illustrative Exhibit 1 was a steel shape; that it was adapted for use in stair construction; that he had designed and constructed buildings and parts of buildings from materials similar to Illustrative Exhibit 1; that among said buildings were those in Radio City, General Motors Building at the World's Fair, at the North Beach Airport known as LaGuardia Airport; that material similar to Illustrative Exhibit 1 was used in connection with the construction of stairs. The witness then testified in part as follows:

Judge KINCHELOE. What function does it perform?

The WITNESS. It eliminates an angle. That is, we used to provide an angle on the stringer to give it additional stiffness, but they have replaced the angle with that section which has the same strength as the angle but is a lot more ornamental.

Judge KINCHELOE. Does it add strength?

The WITNESS. It adds more strength than the angle &ast; &ast; &ast;.

Mr. WELSH. That is, this Section 4153?

The WITNESS. Yes.

Judge DALLINGER. Illustrative Exhibit 1.

The WITNESS. If you take this Illustrative Exhibit 1 and take an angle of equal material and weight, and lay them across varying points and put your weight on them, you will see that this section probably gives twice as much strength as an angle of equivalent weight. I have a drawing here of the stairs I constructed for the North Beach Airport where the wall stringer has an angle connected and the fascia stringer has this member connected.

At this juncture the blueprint or drawing in question was admitted in evidence as Illustrative Exhibit B, over objection of counsel for the Government.

On cross-examination the witness testified in part as follows:

X Q. What did you say a structural shape was, Mr. Fassler?—A. What did I say it was?

X Q. Yes.—A. Any steel member is a structural shape.

\*        \*        \*        .\*        \*        \*        \*

X Q. Referring to Illustratve Exhibit B, illustrative Exhibit 1 is fastened to the base plate, is it not?—A. That's right.

X Q. What do you call the base plate? Fastened to the plate stringer?—A. That's right.

X Q. And the plate stringer supports the weight of the stairs?—A. That's correct.

X Q. So that the plate, itself, is sufficient support for the weight of the stairs?—A. No, sir.

The first defendant's witness was Julius Blum who had already testified on behalf of the plaintiff that the pictures appearing on pages 24 and 25 of the plaintiff's catalog (Collective Illustrative Exhibit A) and described therein as No. 4153, represented the merchandise at bar. The witness then testified in part as follows:

Judge DALLINGER. Mr. Blum, did I understand you to say in your direct testimony you designed this particular shape?

The WITNESS. Yes, sir, my organization. I was instrumental in having it designed.

Judge DALLINGER. According to certain specification? You had certain specifications prepared?

The WITNESS. Yes, sir.

Judge DALLINGER. Now, did you design that particular shape in order to get a shape that would carry the greatest possible weight with the least possible amount of material?

The WITNESS. Exactly, Your Honor.

The second defendant's witness, George E. J. Pistor, a contracting engineer in the Bethlehem Steel Co., a qualified civil engineer and a member of the American Society of Civil Engineers, testified that he was familiar with structural steel shapes; that a structural steel shape was a piece of steel rolled with a flange and designed to possess the maximum carrying capacity with the minimum amount of material; that the function of Illustrative Exhibit 1, as shown on the blueprint

(Illustrative Exhibit B) was simply that of an ornamental molding to complete the plate stringer; that in his opinion Illustrative Exhibit 1 was not a structural steel shape but a steel molding; that in his opinion it did not have the capacity to sustain a relatively great weight or to resist great tension; that while Illustrative Exhibit 1 may add some strength to the stringer its principal function is ornamental; that he could tell from an examination thereof whether or not Illustrative Exhibit 1 was designed to carry the greatest possible weight with the minimum amount of material, and that in his opinion it was not.

On cross-examination the witness testified in part as follows:

X Q. Do you agree with the dictionary definition—you are familiar with it—of a structural steel shape that it is a shape or a member composed of steel, generally rolled?—A. I think that is correct.

X Q. This is a steel shape, Illustrative Exhibit 1?—A. Yes.

X Q. And in use, it is used as a section of a member, part of a member?—A. Yes.

\*        \*        \*        \*        \*        \*        \*

X Q. You will agree that it is a shape used in the construction of buildings?—A. Oh, certainly.

X Q. In various buildings?—A. Yes, for certain ornamental purposes.

X Q. Is it true that certain structural shapes are used, can be used, ornamentally?—A. Yes.

\*        \*        \*        \*        \*        \*        \*

By Judge DALLINGER:

Q. An angle is a structural shape?—A. Yes, sir.

Q. And a channel is a structural shape?—A Yes.

Q. You heard the two witnesses who preceded you testify that this Number 4153, Illustrative Exhibit 1, has all the strength of an angle, and also some of the strength of a channel, and that in its use it adds more strength than the ordinary angle. Do you agree with that, or not?—A. Your Honor, I would have to see the properties either of the angle or the properties of that section in order to prove that that would be as strong as an angle. I should say not.

Q. Then you don't agree with the last witness before you, who stated that he used this in a great many buildings in New York City?—A. I don't agree with him.

\*        \*        \*        \*        \*        \*        \*

Judge DALLINGER. Both of the witnesses before you testified, as I understand it, that they can tell by looking at this Illustrative Exhibit 1 that it has all the strength of an angle and also part of the strength of a channel, and that in use it adds more strength than an angle. You don't think so?

The WITNESS. I don't think so. I would want to calculate it. By calculating it, that is the way we arrive at all of the properties of a section.

The second defendant's witness, Joseph J. Walker, a qualified engineer formerly employed by the American Bridge Co., testified that he was familiar with structural steel shapes; that a steel shape is a rolled section that is designed by the engineers to carry a maximum load with a minimum weight and therefore at minimum cost; that in his opinion Illustrative Exhibit 1 was not a structural steel shape;

that it is used, as shown on Illustrative Exhibit B herein, primarily for ornamentation; that it does not have the capacity of sustaining a relatively heavy weight or resisting relatively great tension; that while some strength is added by the use of Illustrative Exhibit 1, it is entirely incidental, its chief purpose, in his opinion, being for ornamental or decorative purposes; that he could not determine whether Illustrative Exhibit 1 was capable of sustaining great weight with the least possible amount of material without determining its properties, and that in his opinion the stringer plate, as shown on Illustrative Exhibit B, used on a finished stairway, would possess the necessary strength without any addition from Illustrative Exhibit 1.

On cross-examination the witness testified that he did not agree with the plaintiff's witnesses that Illustrative Exhibit 1 has all the strength of an angle plus a lot more.

Upon the entire record we find as a fact that the merchandise at bar is capable of sustaining the greatest possible weight with the least possible amount of material, and is therefore, as a matter of law, a structural steel shape within the meaning of paragraph 312 of the Tariff Act of 1930, and as such dutiable at the rate of one-fifth of 1 cent per pound, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.